IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION
_____

| | |
|---|---|
| RSK CONTRACTING, INC., | ) |
| | ) |
|     Intervening Plaintiff, | ) |
| | ) |
| v. | )     No. 1:11-CV-1204-STA-egb |
| | ) |
| RANDY MARTIN, | ) |
| | ) |
|     Defendant in Intervention. | ) |

_____

ORDER GRANTING INTERVENING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT FOR RETURN OF VESSEL
_____

Before the Court is Intervening Plaintiff RSK Contracting, Inc.'s ("RSK") Motion for Partial Summary Judgment, filed May 13, 2014 (ECF No. 199). Intervening Defendant Randy Martin filed a Response in Opposition to RSK's Motion on July 11, 2014 (ECF No. 213), to which RSK filed a Reply (ECF No. 214). For the reasons stated below, RSK's Motion for Partial Summary Judgment for Return of Vessel is GRANTED.

## BACKGROUND

Randy Martin brought the original action in this matter on July 11, 2011, against Defendants Performance Boat Brokerage.com, LLC ("Performance") and Matthew Smith for damages and injunctive relief. (Pl.'s Compl. ¶ 1–2, ECF No. 1). Martin alleged that Performance fraudulently failed to inform him of a lien on a boat he purchased, failed to satisfy that lien from the proceeds of the sale, and failed to provide him with good title. (*Id.*). On July 14, 2011, the Court granted a preliminary injunction prohibiting the Defendants from selling the business known as Performance Boat Brokerage.com, LLC, or from selling assets of the business

except in the normal and ordinary course of business, without permission of the Court. On November 29, 2011, the Court granted Martin's petition for a prejudgment writ of attachment for all funds owed to Defendants Performance Boat Brokerage.com, LLC and/or Matthew Smith by Mark Waddington and/or Performance, LLC under an asset purchase agreement entered into on August, 2 2011. (Order on Petition for Issuance of Writ of Attachment 2–3, ECF No. 46).

Martin sought a second writ of attachment on February 28, 2012, for a 2004 Outer Limits Boat, Hull Identification Number OPL47014B404, Official Number 1188527 (the "Outerlimits Boat"),[1] supposedly owned by Defendant Performance Boat Brokerage.com, LLC. (Ex Parte Pet. for Issuance of Second Writ of Attachment 1, ECF No. 59). Martin advised the Court that the boat and its trailer were located in the showroom of "Performance, LLC" in Camendon, Missouri (*Id.* at 4), and the United States Marshals executed the writ on February 29, 2012. (*See* Process Return & Receipt, ECF No. 62).

RSK filed an intervenor complaint on April 30, 2012. (Intervening Complaint, ECF No. 76). In the complaint, as amended, RSK, whose sole owner is Mr. Rick Brown, alleged that on October 31, 2009, it purchased the Outerlimits Boat and its trailer from Performance Boat Brokerage.com, LLC for $250,000. (Amended Intervening Compl. ¶ 6, ECF No. 110). This sale was not recorded with the National Vessel Documentation Center ("NVDC"), an office of the United States Coast Guard. As evidence of the purchase, however, RSK presents a cancelled check for the purchase, a bill of sale for the purchase, the invoice for the purchase, and proof of Mr. Brown's insurance on the Outerlimits Boat from May 21, 2010, to the present. (RSK's Statement of Undisputed Facts ¶¶ 7–10, ECF No. 199-13). Martin does not dispute the contents of the documents, but does dispute that the check, bill of sale, and invoice prove RSK's

---

[1] Previous owners had apparently named the boat *G-UNIT*, as evidenced by several filings.

2

ownership. (Response to RSK's Statement of Undisputed Facts ¶¶ 7–10, ECF No. 213-1). RSK has also attached to its Motion a new piece of evidence: a document from the NVDC purporting to show that the Outerlimits Boat has not been a "documented vessel" with the NVDC since January 2, 2009. (Exhibit K to RSK's Mem. in Supp. of Mot. for Partial Summ. J., ECF No. 199-11). This "Evidence of Deletion" letter, RSK argues, shows that the federal priority law under 46 U.S.C. § 31321 does not apply.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party,[3] and it "may not make credibility determinations or weigh the evidence."[4] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[5] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[6] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence

---

[2] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

[5] *Celotex*, 477 U.S. at 324.

[6] *Matsushita*, 475 U.S. at 586.

3

that the nonmoving party is entitled to a verdict.[7] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[8] In this Circuit, the nonmoving party must "put up or shut up" as to the critical issues of the claim.[9] The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[10]

## ANALYSIS

On September 23, 2013, the Court denied Martin's Motion for Summary Judgment on RSK's claims.[11] In the order, Chief United States District Judge Daniel Breen addressed the issue of "whether the unrecorded sale to RSK of a *federally documented vessel* is valid against Martin, a judgment creditor."[12] Since that order, RSK has obtained a document styled "Evidence

---

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[8] *Id.* at 251–52.

[9] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[10] *Celotex*, 477 U.S. at 322.

[11] *Martin v. Performance Boat Brokerage.com, LLC*, 973 F. Supp. 2d 820 (W.D. Tenn. 2013).

[12] *Id.* at 823. The order primarily addressed whether, under the federal priority law governing documented vessels, Martin had "actual notice" of RSK's interest in the boat. *Id.* at 828. At that time, the Court did not have before it evidence that the Outerlimits Boat had been deleted from documentation. *See* Exhibit K to Mem. in Supp. of Mot. for Partial Summ. J., ECF No. 199-11.

of Deletion from United States Documentation" ("Evidence of Deletion") from the NVDC, discussed below.[13]

Now, RSK asks the Court to grant partial summary judgment for return of the Outerlimits Boat and on Martin's alleged liability for damages. The Motion, at its core, is about who owns the Outerlimits Boat. RSK's stance is founded on two assertions: (1) federal priority law governing "documented vessels" does not apply to the Outerlimits Boat; and (2) RSK has owned the boat since October 31, 2009, when it paid $250,000 to Performance. On the other hand, Martin claims that (1) based on federal priority law governing "documented vessels," Martin's writ of attachment on the Outerlimits Boat—which he received to satisfy a judgment against Performance—takes priority over RSK's legally invalid purchase of the Outerlimits Boat; and (2) RSK has never actually owned the boat.

**I. The Ship Mortgage Act and Documentation**

**A. The Act**

Congress enacted the Ship Mortgage Act, upon which Martin relies, to create a new commercial instrument called the "preferred ship mortgage," which would have priority over all maritime liens.[14] The Act sought to "make investment in ship mortgages more attractive."[15] Although neither party claims it has a "preferred ship mortgage" in this case,[16] other courts have

---

[13] Exhibit K to Mem. in Supp. of Mot. for Partial Summ. J., ECF No. 199-11.

[14] *See* 2-VI Benedict on Admiralty § 69.

[15] *McKorkle v. First Penn. Banking & Trust Co.*, 459 F.2d 243, 247 (4th Cir. 1972).
[16] Although not affecting this Court's jurisdiction, which is based on diversity, courts have casted doubt on their own *admiralty* jurisdiction when discussing security interests that were "not 'preferred mortgages.'" *Lewco Corp. v. One 1984 23' Chris Craft Motor Vessel*, 889 F. Supp. 1114, 1118 (D. Minn. 1994). The District Court in Minnesota noted that "when Congress passed the Ship Mortgage Act of 1920, it did not expand admiralty jurisdiction to

applied the recording provisions of 46 U.S.C. § 31321 to title disputes similar to the one before the Court. Section 31321 provides the following:

> (a) (1) A bill of sale, conveyance, mortgage, assignment, or related instrument, whenever made, that includes any part of a documented vessel or a vessel for which an application for documentation is filed, must be filed with the Secretary [of the Department of Homeland Security] to be valid, to the extent the vessel is involved, against any person except—
>
> (A) the grantor, mortgagor, or assignor;
>
> (B) the heir or devisee of the grantor, mortgagor, or assignor; and
>
> (C) a person having actual notice of the sale, conveyance, mortgage, assignment, or related instrument.[17]

In other words, for *documented vessels*, in order for a transfer or purchase to be valid against a subsequent purchaser—or in this case, a judgment lien creditor—such transfer or purchase must be recorded immediately with the NVDC. Thus, a subsequent purchaser would be on notice of another's interest in the boat before buying. It is undisputed that RSK did not record its purchase of the Outerlimits Boat with the NVDC. It is RSK's contention, however, that in order to be the legal owner of the boat, it did not have to record, since the Ship Mortgage Act's recording provision does not apply to this vessel.

Neither party disputes that, at one time, the Outerlimits Boat was a documented vessel. RSK contends, however, that the Outerlimits Boat was not a documented vessel at the time U.S. Marshals executed Martin's judgment against Performance, and thus the priority statute does not apply. In support of its argument, RSK presents the sealed, signed, and certified copy of the

---

encompass all ship mortgages, but rather only to 'preferred maritime mortgages' within the meaning of the Act." *Id.* (citing *McKorkle*, 459 F.2d at 248).

[17] 46 U.S.C. § 31321(a)(1)(C).

6

Evidence of Deletion document.[18] The Evidence of Deletion, signed by the Director of the U.S. Coast Guard's NVDC and certified as a true copy by the NVDC's Documentation Officer, provides that "[t]he records maintained by [the National Vessel Documentation Center] indicate that the vessel named above [official number 1188527] was deleted from documentation on 01/02/2009."[19] Citing "Ownership Change" as the reason for deletion, the document further states that "[a] bill of sale transferring ownership to the entity shown above [Performance Boat Brokerage] was filed and recorded, however, the vessel was not documented in the new ownership."[20] RSK argues that the Evidence of Deletion conclusively establishes, as a matter of law, that the Outerlimits Boat has not been a documented vessel since January 2, 2009, and thus, RSK was not required to record its bill of sale with the Coast Guard.

Martin, on the other hand, claims that his judgment against Performance Boat Brokerage.com, LLC, granted February 28, 2012, takes priority over any purchase by RSK because such purchase was not recorded with the Coast Guard. To make this claim, Martin asserts that the Outerlimits Boat was a documented vessel, thus requiring recordation of any sale. Without notice of a sale to RSK and believing the Outerlimits Boat was owned by Performance Boat Brokerage.com, LLC, Martin claims that his writ was lawfully executed, giving him rights superior to RSK. In reply, RSK argues that Martin is relying on the "false assumption that any change in ownership must be registered with the Coast Guard," an assumption for which Martin has provided "no legal authority."[21]

---

[18] Exhibit K to Mem. in Supp. of Mot. for Partial Summ. J., ECF No. 199-11.

[19] *Id.*

[20] *Id.*

[21] RSK's Reply 3, ECF No. 214.

**B. Deletion from Documentation**

Coast Guard regulations define a "documented vessel" as "a vessel which is the subject of a valid Certificate of Documentation."[22] A Certificate becomes "invalid immediately" when "the ownership of the vessel changes in whole or in part."[23] Here, the Outerlimits Boat was deleted from documentation on January 2, 2009, because of an ownership change. Martin, however, asks this Court to apply the broader definition of 46 U.S.C. § 106, which explains that a "documented vessel" is "a vessel for which a certificate of documentation has been issued."[24] This statutory definition, however, does not address the issue before the Court: whether a documented vessel remains documented *after* invalidation by deletion from documentation.[25] Thus, Congress has not "spoken directly to the precise question at issue," and "the question for

---

[22] 46 C.F.R. § 67.3.

[23] *Id.* § 67.167(b)(1). Furthermore, section 67.161 states that invalidation does not apply for purposes of "an instrument filed or recorded before the date of invalidation, and an assignment or a notice of claim of lien filed after that date." *Id.* § 67.161(c)(1)(A). Thus, although invalidation does not affect an instrument filed before the date of invalidation, according to the regulation, it would affect an instrument filed *after* such invalidation.

[24] 46 U.S.C. § 106.

[25] Martin cites an Eleventh Circuit case for the proposition that "[n]owhere in the Vessel Documentation Act is automatic loss of documentation and status as a U.S. vessel mentioned as a consequence of violating the Act or any particular provision." *United States v. Correa*, 750 F.2d 1475, 1479 (11th Cir. 1985). The case involved appellants seeking to overturn convictions under 21 U.S.C. § 955a, "which makes it an offense to possess marijuana on board a United States vessel with intent to distribute." *Id.* at 1477. The "U.S. vessel" in that case, however, was never deleted from documentation.

the court is whether the agency's answer is based on a permissible construction of the statute."[26] Courts in the Sixth Circuit limit review of agencies' interpretations of statutes "to whether the regulation is a reasonable, but not necessarily the best, interpretation."[27] The agency's reasonable interpretation in 46 C.F.R. § 67.3 deserves deference, as the broader statutory definition does not address the status of a vessel *after* deletion from documentation.[28]

Another federal statute states that the priority provisions of § 31321 continue to apply "for an instrument filed or recorded before the date of invalidation and an assignment after that date."[29] Martin argues that this section continues application of § 31321 until a "surrender" of the certificate of documentation. But the writ of attachment was not filed or recorded before the date of invalidation—January 2, 2009. The Evidence of Deletion proves that the Outerlimits Boat's Certificate of Documentation became invalid, and thus the boat was undocumented.

## II. Ownership of the Boat

Although the Evidence of Deletion proves that the vessel was not documented, the Court still must answer whether RSK owned the boat. This question cannot be answered by § 31321, which only discusses priority for federally documented boats. Instead, the Court must analyze which state's law applies to the undocumented boat.

### A. Choice of Law

---

[26] *Chevron USA v. Natural Resources Def. Counsel, Inc.*, 467 U.S. 837, 842–43 (1984).

[27] *Intermet Corp. v. Comm'r*, 209 F.3d 901, 904 (6th Cir. 2000) (citing *Atl. Mut. Ins. Co. v. Comm'r*, 523 U.S. 382, 390 (1998)).

[28] *See id.* (citing *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 151 (1991).

[29] 46 U.S.C. § 12136.

9

A federal court sitting in diversity applies the choice of law rules of the forum state.[30] Here, in determining whether RSK bought the Outerlimits Boat from Performance Boat Brokerage.com, LLC, the Court must analyze the transaction as a sale of goods. Under Tennessee Code Annotated section 47-1-301(b), in the absence of a choice-of-law agreement by the parties, Tennessee's enacted Uniform Commercial Code will apply to "transactions bearing an appropriate relation" to Tennessee.[31] The alleged sale from Performance Boat Brokerage.com, LLC to RSK, however, bears no relation to Tennessee. Instead, both parties were located in Missouri. Tennessee's relationship to the parties is based only upon Martin's citizenship, and the alleged sale from Performance Boat Brokerage.com, LLC to RSK took place wholly within the state of Missouri. Therefore, Missouri law applies to the sale.

**B. Ownership**

The question of "priority" is actually one of ownership: if Performance Boat Brokerage.com, LLC was not actually the owner of the boat, then the writ of attachment was not properly issued. Here, "unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods."[32] Furthermore, "if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting."[33] RSK's

---

[30] *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009).

[31] Tenn. Code Ann. § 47-1-301(b); *see Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 823 F. Supp. 2d 786, 801 (W.D. Tenn. 2011).

[32] Mo. Rev. Stat. § 400.2-401(2)

[33] *Id.* § 400.2-401(3)(b). The Missouri statutes seemingly do not address what proves "ownership" of a boat. Although certain provisions require registration with regard to the payment of taxes, the statutes and case law provide no guidance on ownership. *See id.* §§ 301.200, 210; 144.070. The Missouri Court of Appeals, in at least one case treating the passing

evidence that it purchased the Outerlimits Boat proves that it was the legal owner of the boat when the writ of attachment was executed on February 29, 2012.

RSK presents four pieces of evidence to prove that it did indeed buy the boat from Performance Boat Brokerage.com, LLC: (1) a cancelled check for the purchase of the Outerlimits Boat dated October 31, 2009, in the amount of $250,000, which shows that $250,000 from RSK's account was credited to the account of "Performance Boat Brokerage" at U.S. Bank on November 3, 2009; (2) a November 3, 2009 invoice from Performance Boat Brokerage.com, LLC, billing RSK for the purchase price of $250,000 for the "2004 47' Outerlimits" and stamped "PAID"; (3) a signed and notarized bill of sale dated November 5, 2009, showing Performance Boat Brokerage.com, LLC as seller and RSK as buyer; and (4) insurance declarations showing Brown's insurance on the Boat from May 21, 2010, to the present. Although Martin casts doubt on inferences that may be drawn from these documents, he presents no real evidence to dispute them.

With regard to the bill of sale, Martin alleges that the seller listed is "Peformance Boat Brokerage.com, LLC," rather than "Performance Boat Brokerage," which is the entity listed as payee on the check. This, he argues, proves that the entity which sold the Boat to RSK did not actually own the boat, thus rendering such sale invalid. But Martin, in his petition for writ of attachment, represented to the Court that the Outerlimits Boat and its trailer were, at the time,

---

of title for purposes of insurance under section 301.200, recognized previous case law holding that "'As a matter of law, a bill of sale is not necessary to pass the title to personal property. A delivery of the possession of goods under a contract to purchase passes the title, and from that time they belong to the vendee and are his risk.'" *Galemore v. Mid-West Nat'l Fire & Casualty Ins. Co.*, 443 S.W.2d 194, 198 (Mo. Ct. App. 1969) (quoting *Gatzweiler v. Morgner*, 51 Mo. 47, 49 (1872)). Furthermore, "At common law, a title is prima facie evidence of ownership, but is not the *sine qua non* of ownership." *Mo. Mexican Prods. v. Dunafon*, 873 S.W.2d 282, 285 (Mo. Ct. App. 1994) (citing *Machester Ins. & Indemnity Co. v. State Farm Mut. Auto Ins. Co.*, 460 S.W.2d 305, 308 (Mo. Ct. App. 1970)).

"owned by Defendant Performance Boat Brokerage.com, LLC."[34] It was on this basis that the Court issued the writ of attachment. Even after successfully representing to the Court that the boat and its trailer were owned by Performance Boat Brokerage.com, LLC, Martin now asks the Court to conclude that the same entity never owned the Boat. The Court declines to do so. The doctrine of judicial estoppel "forbids a party 'from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.'"[35] Martin was successful in obtaining the writ of attachment on the assertion that Performance Boat Brokerage.com, LLC owned the boat. He may not now argue the contrary. In essence, Martin obtained a writ of attachment on a boat he mistakenly believed was owned by Performance Boat Brokerage.com, LLC.

**C. Equitable Estoppel**

Martin also previously argued that RSK's failure to comply with Missouri's tax and registration laws and to include the boat as an asset on financial statements means that it is equitably estopped from claiming ownership of the Outerlimits Boat.[36] The doctrine requires the party asserting it as a defense to prove "(1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon; (2) an action by the other party on the faith of the admission, statement, or act; and (3) injury to such other party, resulting from allowing the first

---

[34] Ex Parte Pet. for Issuance of Second Writ of Attachment 1, ECF No. 59.

[35] *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217 (6th Cir. 1990) (quoting *Reynolds v. Comm'r*, 861 F.2d 469, 472–73 (6th Cir. 1988)).

[36] Although Martin previously raised the defense of equitable estoppel in its own Motion for Summary Judgment, Chief Judge Breen's ruling on that motion did not require an analysis of the doctrine.

party to contradict or repudiate the admission, statement or act."[37] Without reaching the issue of whether RSK's omission is considered an "act" that induced Martin to act, the Court holds that equitable estoppel does not apply in this instance. Equitable estoppel "is not favored in the law and it will not be invoked lightly."[38] Instead, the doctrine should only apply "where the equities clearly are balanced in favor of the party seeking relief."[39] Here, although RSK's failure to comply with certain tax requirements is troubling, allowing Martin to possess the boat in spite of RSK's evidence of its expenditures purchasing and insuring the boat would be equally troubling. Thus, the doctrine cannot be said to clearly favor Martin.

## CONCLUSION

Having determined that the Ship Mortgage Act's priority provisions do not apply to this case, the Court holds that RSK's uncontroverted evidence proves that it was the legal owner of the Outerlimits Boat when the writ of attachment was issued. Thus, RSK's Motion for Partial Summary Judgment for Return of Vessel is **GRANTED**. Furthermore, the Second Writ of Attachment is **VACATED**, and Martin is ordered to return the Outerlimits Boat to RSK within 14 days of the issuance of this Order. RSK shall have 30 days from the issuance of this Order to file any motions, affidavits, or memoranda as to additional damages, if any, that it claims. If RSK does move for additional damages, Martin shall have 30 days to respond to such motion.

**IT IS SO ORDERED.**

---

[37] *Ryan v. Ford*, 16 S.W.3d 644, 651 (Mo. Ct. App. 2000) (citing *Farmland Indus., Inc. v. Bittner*, 920 S.W.2d 581, 583 (Mo. Ct. App. 1996)).

[38] *Comens v. SSM St. Charles Clinic Med. Group, Inc.*, 258 S.W.3d 491, 496 (Mo. Ct. App. 2008) (citing *Investors Title Co. v. Chi. Title Ins. Co.*, 983 S.W.2d 533, 537 (Mo. Ct. App. 1998)).

[39] Am. Jur. 2d *Estoppel and Waiver* § 3.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: October 16, 2014.